```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
MASTERCARD INTERNATIONAL        :
INCORPORATED,                   :
                                :
              Plaintiff,        :
                                :   06 Civ. 3036 (LAP)
         -against-              :
                                :   OPINION AND ORDER
FEDERATION INTERNATIONALE       :
DE FOOTBALL ASSOCIATION,        :
                                :
              Defendant.        :
-------------------------------x
```

LORETTA A. PRESKA, U.S.D.J.

Plaintiff MasterCard, a Delaware corporation with its principal place of business in Purchase, New York, brought an action against Federation Internationale de Football Association ("FIFA"), a Swiss organization, for breaching a contract to give MasterCard the right of first refusal for a future sponsorship program.  This motion to dismiss for lack of personal jurisdiction is the first of several motions that have been submitted.[1]  For the reasons set out below, the motion is denied.

---

[1] This is part of a motion that included a motion to compel arbitration; the motion was bifurcated to enable the Court to address the jurisdictional issue quickly.

BACKGROUND

MasterCard and FIFA entered a World Cup Sponsorship Agreement for 2003-2006 (the "Agreement") on November 26, 2002, Compl. ¶ 14;[2] Brodsky Decl. Ex. 1, Agreement at 25,[3] their fourth consecutive World Cup agreement, Compl. ¶ 12; Munson Decl. ¶ 5.[4] The Agreement came about after months of negotiations that included two days of meetings on September 10 and 11, 2002, at MasterCard's headquarters in Purchase, New York, and numerous phone conversations and e-mails that were placed, sent, and received in New York. Compl. ¶ 15; Munson Decl. ¶¶ 17, 44; Stuart Decl. ¶¶ 20-21;[5] Thomson Decl. ¶ 4.[6]  Further, aspects of the performance of the Agreement have taken place in New York. Compl. ¶ 15; Munson Decl. ¶ 42.

MasterCard alleges that an important aspect of the Agreement was MasterCard's right of first refusal for future sponsorships. Compl. ¶¶ 20-21.  In a letter dated April 5, 2006, FIFA informed MasterCard that FIFA had entered a sponsorship agreement with VISA for 2007-2014, which MasterCard alleges is a violation of the right-of-first-refusal provision. Compl. ¶¶ 44-

---

[2] "Compl." refers to the Complaint filed on April 20, 2006.
[3] "Brodsky Decl." refers to the Declaration of William M. Brodsky dated June 19, 2006.
[4] "Munson Decl." refers to the Declaration of Carl J. Munson, Jr., sworn to on June 8, 2006.
[5] "Stuart Decl." refers to the Declaration of John Stuart dated June 6, 2006.
[6] "Thomson Decl." refers to the Declaration of Michael Thomson, dated June 16, 2006.

45.  FIFA now moves to dismiss this action for lack of personal jurisdiction because, it argues, MasterCard has not established the requisite minimum contacts for jurisdiction in New York.

DISCUSSION

A. Standard for Dismissal under Rule 12(b)(2)

FIFA argues that the Court does not have personal jurisdiction over it, and MasterCard bears the burden of demonstrating jurisdiction. See Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). Plaintiff need only make a prima facie showing of jurisdiction at this time, however, because I decide the question of personal jurisdiction solely on the basis of affidavits and documentary material. Catalyst Energy Dev. Corp. v. Iron Mountain Mines, Inc., 630 F. Supp. 1314, 1315 (S.D.N.Y. 1986) (citing Mayes v. Leipziger, 674 F.2d 178, 182 n.3 (2d Cir. 1982); Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)).  In considering challenges to personal jurisdiction under Rule 12(b)(2), a court may consider evidence extrinsic to the pleadings, such as affidavits. See Kronisch v. United States, 150 F.3d 112, 130-31 (2d Cir. 1998).

B. Application

I must analyze personal jurisdiction in two parts:  First, whether FIFA is amenable to service and, second, whether

jurisdiction "comports with the requirements of due process." Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999) (quoting Metro. Life, 84 F.3d at 567).

    1. Amenable to Service

MasterCard invokes New York's long-arm statute to argue that FIFA is amenable to service by having transacted business in New York.  Section 302(a)(1) of the New York Civil Practice Law and Rules, in pertinent part, provides:

> (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>     1. transacts any business within the state or contracts anywhere to supply goods or services in the state. . . .

The Court of Appeals has explained that courts should consider several factors to determine whether an out-of-state defendant transacts business in New York:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendant] to send notices and payments into the forum state or subjects [defendant] to supervision by the corporation in the forum state.

Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004) (quoting Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996)).

4

FIFA argues that MasterCard has shown only the "barest of contacts" between FIFA and New York because there is only proof of two days of negotiations that took place in New York. Def. Memo. at 18 (citing Spencer Trask Ventures, Inc. v. Archos S.A., 01 Civ. 1169 (LAP), 2002 U.S. Dist. LEXIS 4396, *4 (S.D.N.Y. Mar. 15, 2002) (holding that a "fortuitous" meeting in New York that lasted two hours while defendant was in town for a trade show was insufficient to confer jurisdiction on the basis that defendant "purposefully availed itself" of the privileges of doing business in New York)). MasterCard, in turn, relies on the New York Court of Appeals' recent holding that "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Deutsche Bank Secs., Inc. v. Mont. Bd. of Investments, 2006 WL 1525924, *3 (N.Y. June 6, 2006) (holding that New York's long-arm statute provided jurisdiction even where defendant only sent instant messages to plaintiff while knowing that plaintiff was in New York and noting that "the growth of national markets for commercial trade, as well as technological advances in communication, enable a party to transact enormous volumes of business within a state without physically entering it")). I find that all of the Sunward

5

factors, except for the third factor, favor a finding that FIFA was transacting business in New York.

As to the first factor, whether the defendant has an on-going contractual relationship with a New York corporation, FIFA and MasterCard had enjoyed a business relationship spanning some sixteen years (four consecutive sponsorship cycles) during which MasterCard was an official sponsor of the FIFA World Cup.[7]  Thus, this factor favors MasterCard.

As to the second factor, whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship, FIFA's actions go beyond the actions that the defendant took in Deutsche Bank, where that defendant did not ever even enter New York.  Here, on September 6, 2002, FIFA initiated the negotiations for the next sponsorship cycle by sending MasterCard an e-mail to its offices in Purchase, New York, with a draft Agreement. Munson Decl. ¶¶ 15-16, Ex. 6. Then, two days of meetings were planned, complete with an agenda, and five FIFA representatives traveled to Purchase to meet with MasterCard representatives at MasterCard's offices to

---

[7] The previous sponsorships were negotiated through ISL Marketing AG, which had been the sports licensing and marketing company in Europe that handled sponsorships for FIFA prior to the 2003-2006 Agreement. Munson Decl. ¶ 5.

6

negotiate a sponsorship arrangement. Munson Decl. ¶ 13, 17, Ex. 7. Even though the two days of meetings were the only face-to-face contacts FIFA had in New York, these contacts were significant; it was at these meetings that key negotiations took place and the FIFA representatives came to New York for the announced purpose of negotiating the contract, as was evident from, for example, the agenda on which the heading for the meetings was:

> FIFA MEETINGS
> September 10 – 12, 2002
> Purchase, NY

Munson Decl. ¶ 13, Ex. 7, and which included an agenda item entitled "All-day contract/renewal discussions," id.  In any event, innumerable letters, faxes, e-mails, and telephone calls were placed, sent, and received to and from New York. Munson Decl. ¶ 44; Hughes Decl. ¶¶ 13-15.[8]  This second factor clearly favors MasterCard.

The third factor, the choice-of-law clause, favors FIFA because the contract stipulates that Swiss law governs. Brodsky Decl. Ex. 1, Agreement ¶ 21.

As to the fourth factor, whether the contract requires defendant to send notices and payments into the forum state or subjects defendant to supervision by the corporation in the

---

[8] "Hughes Decl." refers to the Declaration of Deborah Hughes sworn to on June 6, 2006.

7

forum state, the Agreement has involved "innumerable e-mails" and "countless letters, faxes and courier packages addressed and delivered to [MasterCard] by FIFA." Hughes Decl. ¶¶ 13-15. Further, "[a]ll of the tens of millions of dollars that MasterCard has paid to FIFA over the past four years have been wired from a New York bank account." Hughes Decl. ¶ 13.  Also, the advertising and marketing campaigns that exploit MasterCard's rights under the Agreement were developed and coordinated in New York. Hughes Decl. ¶ 13.  This factor also favors MasterCard.

On balance, FIFA's involvement in the two days of negotiations in Purchase, New York, where MasterCard is based, and later communications by e-mail and telephone with MasterCard, continuing with the contract negotiations and performance--knowing that MasterCard was in New York--is more analogous to Deutsche Bank than to Spencer Trask.  MasterCard has made a prima facie showing of sufficient contacts because FIFA's coming to New York to participate in the negotiations and its follow-up contacts with MasterCard were purposeful and involved negotiating and performing the contract at issue. Accordingly, FIFA is amenable to service under section 302(a)(1) of the New York Civil Practice Law and Rules.

8

### 2. Comporting with Due Process

As to the second requirement for personal jurisdiction, comporting with the requirement of due process,

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); see also Asahi Metal Indus. Col, Ltd. V. Superior Ct. Of Cal., 480 U.S. 102, 108 (1987) (O'Connor, J., plurality).  A defendant must "purposefully avail itself of the privilege of conducting activities within the forum State." Hanson v. Denckla, 357 U.S. 235, 253 (1958); see also Asahi Metal, 480 U.S. at 110. Further, "the defendant's conduct and connection within the forum State [must be] such that he should reasonably anticipate being haled into court there," World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Asahi Metal, 480 U.S. at 109.  There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

Here, as noted above, FIFA came to New York for two days to negotiate key aspects of a contract with a company that has its

principal place of business in New York and then continued to have electronic and telephonic communications with that company toward completing negotiations and performance of the contract--all of the time knowing that the company it was dealing with (and had dealt with over years before) was in New York. Then, FIFA entered into the contract at issue with that New York-based company. For these reasons, FIFA has "purposely availed itself of the privilege of conducting business" in New York so that the exercise of long-arm jurisdiction fully comports with due process.

## CONCLUSION

For the reasons set out above, FIFA's motion to dismiss for lack of personal jurisdiction is denied.

Counsel shall appear for the previously scheduled preliminary injunction hearing on September 18, 2006, at 10 a.m.

SO ORDERED:

Dated:   New York, New York
         August 10, 2006

*Loretta A Preska*
LORETTA A. PRESKA, U.S.D.J.