UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                  :
MASTERCARD INTERNATIONAL          :
INCORPORATED,                     :    06 Civ. 3036 (LAP)
                                  :
                Plaintiff,        :    OPINION
                                  :    AND ORDER
                                  :
        v.                        :
                                  :
                                  :
FÉDÉRATION INTERNATIONALE DE      :
FOOTBALL ASSOCIATION,             :
                                  :
                Defendant.        :
                                  :
----------------------------------x

Of Counsel:

Martin S. Hyman
Adam C. Silverstein
Elizabeth A. Jaffe
Shira Franco
GOLENBLOCK EISEMAN ASSOR
BELL & PESKOE LLP
437 Madison Avenue
New York, NY  10022
(212) 907-7300
Attorneys for Plaintiff

Noah Hanft
Eileen Simon
Cheryl Givner
MasterCard International Incorporated
2000 Purchase Street
Purchase, NY  10577
(914) 249-2000

Turner P. Smith
T. Barry Kingham
Gabriel Hertzberg
CURTIS MALLET-PREVOST COLT & MOSLE LLP
101 Park Avenue
New York, NY  10178
(212) 696-600
Attorneys for Defendant

William M. Brodsky
FOX HORAN & CAMERINI LLP
825 Third Avenue
New York, NY  10022
(212) 480-4800
Attorneys for Defendant

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------X
                                  :
MASTERCARD INTERNATIONAL          :
INCORPORATED,                     :    06 Civ. 3036 (LAP)
                                  :
                Plaintiff,        :    OPINION
                                  :    AND ORDER
                                  :
        v.                        :
                                  :
                                  :
FÉDÉRATION INTERNATIONALE DE      :
FOOTBALL ASSOCIATION,             :
                                  :
                Defendant.        :
                                  :
----------------------------------x
```

LORETTA A. PRESKA, U.S.D.J.

FIFA's latest actions demonstrate that it still does not govern itself by its slogan, "fair play."  It has vigorously litigated MasterCard's request for injunctive relief in this Court and has lost, fair and square.  Instead of observing the rules of the game and proceeding solely to appeal the judgment entered in this Court, it has, at the same time, sought a do-over with a different referee -- an arbitral tribunal in Switzerland.  Even after judgment has been entered and with the appeal proceeding, FIFA continues to request that the arbitral

referee undo each ruling of this Court -- a course of
action our courts have recognized as the antithesis of fair
play.  MasterCard now seeks an anti-suit injunction to
prevent a do-over with this different referee, and, for the
reasons set forth below, it is granted.

BACKGROUND

Plaintiff MasterCard International Incorporated
("MasterCard") brings this motion seeking an order
permanently enjoining Defendant Fédération Internationale
de Football Association ("FIFA") from pursuing its
Complaint, and directing it to withdraw its Notice of
Arbitration, in the arbitration now pending before the
Zurich Chamber of Commerce ("Arbitration Tribunal"), SCA
No. 600070-2006.  FIFA opposes this motion for an anti-suit
injunction and seeks to continue to pursue action before
the Arbitration Tribunal in Switzerland.


Action in the Southern District of New York

The original action was commenced on April 20, 2006,
when MasterCard filed a Summons and Complaint alleging that
FIFA materially breached MasterCard's first right to
acquire post-2006 sponsorship rights contained in Section
9.2 of the Official FIFA Partner Agreement between FIFA and
MasterCard made as of November 26, 2002 (the "2002-06

Agreement"), which Agreement granted MasterCard sponsorship rights with respect to the FIFA World Cup and other FIFA competitions during the 2003 to 2006 time period. (Declaration of Martin S. Hyman, Esq., executed January 25, 2007, (the "Hyman Decl."), Ex. 1, MasterCard Complaint, filed April 20, 2006, ("MasterCard Complaint")).  In its Complaint, MasterCard requested both preliminary and permanent injunctive relief: (i) enjoining FIFA from performing under a purported sponsorship agreement with VISA or any other "financial services" partner other than MasterCard during the period January 1, 2007 to December 21, 2014; and (ii) directing FIFA to specifically perform its obligation, under Section 9.2, to grant to MasterCard the package of advertising and sponsorship rights reflected in a 96-page written sponsorship [agreement] offer for the 2007-2014 time period that was delivered to and accepted by, MasterCard, in March 2006. (MasterCard Complaint).

On June 15, 2006, MasterCard filed a motion for preliminary injunction seeking the preliminary relief described above. (Dkt. no. 6).  FIFA moved to dismiss MasterCard's complaint on jurisdictional grounds. (Dkt. no. 20).  It also moved to compel arbitration on the basis that the matters in the suit before this Court fit within the broad language of the parties' arbitration provision,

3

Section 22 of the 2002-06 Agreement, and that the ultimate merits of the parties' dispute should be resolved exclusively through arbitration in Switzerland. (Dkt. no. 20).  FIFA's motion to dismiss for lack of personal jurisdiction was denied from the bench on July 20, 2006, and a written Opinion and Order was issued dated August 10, 2006. (Dkt. nos. 46, 48).  FIFA's motion to compel arbitration was denied by a decision read into the record on July 27, 2006. (Dkt. no. 46)(Hyman Decl., Ex. 2, Transcript of the Decision, dated July 27, 2006, (the "Decision")).  In the Decision, the Court determined, as a threshold matter, that "it is the Court [and not the arbitrators] that must decide whether this dispute is subject to arbitration." (Id. at p.4).  The Court examined the Swiss law presented by both sides as well as the arbitration provision in the 2002-06 Agreement (that provided for a non-breaching party to seek "any and all equitable relief including an injunction" in a court of competent jurisdiction (2002-06 Agreement, ¶ 22)) and determined that the Court could decide the ultimate merits of the non-breaching party's claim for equitable relief, including permanent (as opposed to temporary) equitable relief, (id. at pp. 4-10).

On September 25, 2006, the trial on the merits was consolidated with the preliminary injunction hearing. (Dkt. no. 54).  The preliminary injunction hearing and trial on the merits were held on November 28 through December 1, 2006, during which the Court received evidence and heard testimony from live witnesses.

On December 6, 2006, this Court issued its Findings of Fact and Conclusions of Law, amended the following day on December 7, 2006. (Hyman Decl., Ex. 3, Amended Findings of Fact and Conclusions of Law, dated December 7, 2006, ("Amended Findings and Conclusions")).  The Court concluded that FIFA had materially breached Section 9.2 of the 2002-06 Agreement by "not granting the package of post-2006 rights offered to, and accepted by, MasterCard at FIFA's asking price and instead purporting to grant them to VISA." (Amended Findings and Conclusions, at ¶ 100 of Conclusions of Law).[1]  The Court also determined that "FIFA's conduct in performing its obligations under Section 9.2 and in its negotiations relating to the sponsorship rights covered by that section breached the obligation of good faith imposed by Swiss law, and thus FIFA breached the [2002-06]

---

[1] In finding the 2002-06 Agreement still in effect, and, thus, Section 9.2 operative, the Court also found that "FIFA's September 20, 2006 letter purporting to terminate the [2002-06] Agreement is null and void."  (Amended Findings and Conclusions at ¶ 106 of Conclusions of Law).

Agreement." (<u>Id.</u> at ¶ 101 of Conclusions of Law).  In addition, the Court found that "independently of the foregoing breaches, FIFA has breached section 9.2 of the 2002-06 Agreement by granting to VISA rights that are not 'on comparable terms' to those offered to MasterCard". (<u>Id.</u> at ¶ 102 of Conclusions of Law).  The Court determined that an injunction was appropriate because "in the absence of an injunction, MasterCard would suffer . . . irreparable harm." (<u>Id.</u>, at ¶¶ 13, 21 of Conclusions of Law) ("MasterCard's loss of the next World Cup Sponsorship would be, in its now-famous words, 'Priceless.'").  Finally, in accordance with Section 22 of the 2002-06 Agreement, the Court found that MasterCard was entitled to its "costs and expenses in connection with its enforcement of its rights including all reasonable legal fees, costs and disbursements."  (<u>Id.</u> at ¶ 121(c) of Conclusions of Law).

Accordingly, judgment was entered on December 8, 2006 (Dkt. no. 79)(the "Judgment"), stating that it is hereby:

ORDERED that FIFA is permanently enjoined from implementing or otherwise proceeding with its purported 2007-14 "FIFA World Cup" sponsorship agreement with VISA or otherwise granting to VISA, or any entity other than MasterCard, any package of advertising and sponsorship rights, with respect to

payments solutions or financial services products or services, in connection with FIFA competitions during the period 2007 to 2014; and it is further

ORDERED that FIFA shall specifically perform its obligations to MasterCard under section 9.2 of the [2002-06 Agreement], by granting to MasterCard the package of advertising and sponsorship rights, which previously was offered to and accepted by MasterCard, with respect to payment solutions products or services, in connection with FIFA competitions during the period 2007-2014, on the terms and conditions set out in the 2007-14 sponsorship agreement delivered by FIFA to MasterCard on March 3, 2006 to execute and that MasterCard did execute; and it is further

ORDERED that, in accordance with section 22 of the 2002-06 Agreement, FIFA shall pay to MasterCard all of MasterCard's "costs and expenses in connection with its enforcement of its rights, including all reasonable legal fees, costs, and disbursements." The amount of those costs and expenses shall be determined following the conclusion of any appellate proceedings or after FIFA's time to appeal has expired.

(Judgment).

On December 12, 2006, FIFA timely filed a notice of
appeal from the Judgment challenging, inter alia, the
Court's decision to determine arbitrability; the denial of
FIFA's motion to compel arbitration; and issuance of a
permanent injunction on the merits. (Declaration of T.
Barry Kingham, Esq., executed on February 9, 2007,
("Kingham Decl."), Ex. B, FIFA's Opening Appellate Brief).
On December 21, 2006, the parties entered into a post-
judgment Stipulation and Order which, inter alia, stayed
pending appeal that portion of the Judgment that compelled
FIFA to grant to MasterCard the post-2006 sponsorship
rights on the terms and conditions set out in an agreement
presented to MasterCard on March 3, 2006. (Hyman Decl.,
Ex. 6, Stipulation and Order, dated December 21, 2006,
("Stipulation and Order")).  FIFA's appeal has been granted
expedited treatment (one of the conditions of the stay) and
tentatively has been set down for argument during the week
of March 19, 2007.  On January 26, 2007, MasterCard filed
the instant motion to enjoin FIFA from proceeding with the
arbitration in Switzerland.

Arbitration Before the Zurich
Chamber of Commerce Arbitral Tribunal

    While the Court was considering FIFA's motions, FIFA
formally commenced arbitration by filing a Notice of

Arbitration with the Zurich Chamber of Commerce's Arbitral
Tribunal on June 21, 2006.  In its Notice, FIFA requested
that its dispute with MasterCard be referred to arbitration
in Switzerland and that it be awarded the following relief:
(i) "It shall be declared that FIFA did not violate clause
9.2 of the contract with MasterCard"; (ii) "it shall be
declared that FIFA is not obliged to conclude a new
contract with MasterCard for any period after 2006"; and
(iii) MasterCard "shall bear all costs of the arbitration
proceedings." (Hyman Decl., Ex. 7, Notice of Arbitration,
dated June 21, 2006, "Notice of Arbitration").  On August
3, 2006, MasterCard submitted an Answer to the Notice of
Arbitration and Notice of Counterclaim: (i) denying the
Arbitral Tribunal's jurisdiction over FIFA's purported
claim; (ii) denying the merit of FIFA's claim; and (iii)
asserting as a counterclaim essentially the same claim for
equitable relief (and, in the alternative, for damages)
that it asserted in its action before this Court. (Hyman
Decl., Ex. 8, Answer to Notice of Arbitration and Notice of
Counterclaim, dated August 3, 2006, ("Answer to Notice of
Arbitration and Notice of Counterclaim")).

On November 8, 2006, the Arbitral Tribunal conducted a
Preliminary Hearing, during which it heard argument as to
whether it had jurisdiction over the dispute or whether it

would stay its proceedings pending the outcome and any
subsequent appeal of the litigation before this Court.   On
November 23, 2006, before issuing its decision on
MasterCard's jurisdictional challenge, an Amended
Provisional Time-table was issued under which FIFA was
provided until January 12, 2007 to submit a "Full
Complaint"; MasterCard was given until February 26, 2007 to
submit an "Answer to [the] Main Claim"; the first round of
evidentiary submissions were set to commence on March 26,
2007; and the Hearing was scheduled to begin on May 1,
2007. (Hyman Decl., Ex. 9, Amended Provisional Time-table,
dated November 23, 2006, ("Amend. Provisional Time-
table")).

On November 27, 2006, the Arbitral Tribunal issued a
Preliminary Award denying MasterCard's request to dismiss
the arbitration for lack of jurisdiction or, in the
alternative, to stay the arbitration pending resolution of
the action. (Hyman Decl., Ex. 10, Preliminary Award, dated
November 27, 2006, ("Preliminary Award")).   The Arbitral
Tribunal concluded that only it, and not this Court, had
jurisdiction to award permanent relief to the parties.
(Preliminary Award at ¶ 208).   The Arbitral Tribunal
accepted and adopted the position of FIFA, which was
rejected by the Court's Amended Findings of Fact and

Conclusions of Law, that "any and all equitable relief" referred to in Section 22 of the 2002-06 Agreement encompasses only "provisional" and "conservatory" relief. (<u>Id.</u> at ¶¶ 172, 191-92, 208). Thus, the Arbitral Tribunal noted that "it makes little sense to have <u>both</u> the Southern District and the Arbitral Tribunal have final jurisdiction. But the question simply is, which of the two <u>rightly</u> has final jurisdiction." (<u>Id.</u> at ¶ 189)(emphasis in original). The Arbitral Tribunal went on to conclude that "there is no jurisdiction of these other fora for final relief, no matter whether legal or equitable in nature under Anglo-American concepts." (<u>Id.</u> at ¶ 208). It further noted that any "court decision resulting from the proceedings in New York would, based on the facts submitted so far, most likely not be recognizable in Switzerland." (<u>Id.</u> at ¶ 118).

In accordance with the Amended Provisional Time-table, FIFA submitted its Full Complaint to the Arbitration Tribunal on January 12, 2007. The 111-page Full Complaint seeks a declaration from the Arbitral Tribunal that:

> (i) "on September 20, 2006, Claimant [FIFA] rightfully terminated the 2002-06 Agreement" and thus, as a consequence thereof, "Respondent [MasterCard] can no longer rely on its first right to acquire pursuant to Section 9.2 of the 2002-06 Agreement";

(ii) in the alternative, "FIFA did not violate
section 9.2 of the [2002-06] Agreement . . . [or] the
principle of good faith vis-à-vis MasterCard during
the term of the [2002-06] Agreement";

(iii) "FIFA is not obliged to conclude a new
contract with MasterCard for any period after 2006";
and

(iv) "[t]he Respondent [MasterCard] shall bear
. . . the costs for legal representation and
assistance of Claimant [FIFA]."

Hyman Decl., Ex. 11, Arbitration Full Complaint, dated
January 12, 2007, ("Arbitration Complaint") at ¶ 1).

FIFA claims that it may be granted such relief because
the Arbitral Tribunal already has held "that it is not
bound to recognize the views of the District Court" and
that the Court's Amended Findings of Fact and Conclusions
of Law contain "numerous . . . deficiencies" and is the
product of "emotionally charged bias." (Arbitration
Complaint at ¶¶ 14, 29).  Therefore, FIFA confirms that
"the object of this arbitration" is, in essence, to undo
the Judgment, specifically to "determine that FIFA . . .
was entitled to terminate the [2002-06 Agreement], and, as
a consequence thereof . . . violated neither section 9.2 of

the [2002-06] Agreement nor its duty to negotiate according
to the principle of good faith." (<u>Id.</u> at ¶ 30).

DISCUSSION

I. <u>Jurisdiction</u>

     While for some months parallel proceedings have
progressed in two separate fora on the issue of FIFA's
alleged breach of the 2002-06 Agreement, this Court
conducted a preliminary injunction hearing and trial on the
merits and entered a final judgment, the first (and only)
final judgment to be entered in either forum.  That
judgment was then appealed by FIFA to the Court of Appeals.
Although the general rule is that once a notice of appeal
has been filed, jurisdiction is conferred on the Court of
Appeals and the district court is divested of its control
over those aspects of the case involved in the appeal, the
Court of Appeals has recognized exceptions to that general
rule.  <u>E.g.</u>, <u>Kidder, Peabody & Co. v. Maxus Energy Corp.</u>,
925 F.2d 556 (2d Cir. 1991)(citing <u>Griggs v. Provident
Consumer Discount Co.</u>, 459 U.S. 56, 58 (1982)(<u>per</u> <u>curiam</u>)
and <u>Int'l Ass'n of Machinists & Aerospace Workers v.
Eastern Air Lines</u>, 847 F.2d 1014 (2d Cir. 1988))(internal
quotations omitted).

13

In Kidder Peabody, the plaintiff filed an action for
declaratory relief in the Southern District of New York
mere hours after the defendant Maxus had filed suit for
breach of contract and negligence against Kidder, Peabody
in Texas state court.  After the two actions proceeded in
parallel for almost two years, the district court granted
declaratory judgment in favor of Kidder Peabody. Id.  Maxus
then appealed from the judgment and moved for summary
judgment in its favor in the Texas state court action. Id.
at 565.  While the appeal was pending, Kidder Peabody moved
in the district court for an anti-suit injunction, which
the district court granted, enjoining Maxus from pursuing
in Texas state court any claim, no matter how denominated,
arising from the transaction at issue in the New York
action. Id.  On appeal, Maxus argued that, because of its
appeal, the district court lacked the jurisdiction to grant
the anti-suit injunction. Id.  The Court of Appeals
rejected that argument, noting that under Federal Rule of
Civil Procedure 62(c), a district court may grant
injunctive relief after a proper notice of appeal has been
filed, but only when it is necessary to preserve the status
quo pending the appeal. Id.  The Court of Appeals went on
to hold that the district court "had the jurisdiction to
issue an injunction to preserve the status quo" and had

14

properly enjoined Maxus from relitigating the issues
decided in the district court. Id.[2]

By virtue of the Amended Findings and Conclusions, the
Judgment and the Stipulation and Order of December 18, 2006
(staying that portion of the injunction requiring FIFA's
specific performance of Section 9.2 by granting post-2006
sponsorship rights to MasterCard), the status quo in this
action is that FIFA is in breach of the 2002-06 Agreement
and is prohibited from proceeding with its purported
agreement with VISA for post-2006 sponsorship rights.  FIFA
seeks to change the status quo by arbitrating in
Switzerland in an effort to undo the very issues that were
tried and decided by this Court.  Just as in Kidder
Peabody, FIFA seeks to re-litigate the precise issues upon

_____

[2] In addition to preserving the status quo, the Court of
Appeals has recognized other instances where a district
court may exercise limited jurisdiction notwithstanding a
pending appeal, such as taking measures that will aid the
appeal, acting on measures that are collateral to the
issues on appeal, or as specifically provided by the
Federal Rules of Civil Procedure. See, e.g., Tancredi v.
Metropolitan Life Ins. Co., 378 F.3d 220, 225 (2d Cir.
2004)(stating that district court's "residual jurisdiction
over collateral matters" permits it to award attorneys'
fees while appeal is pending); Leonhard v. United States,
633 F.2d 599, 609-10 (2d Cir. 1980)("[o]nce a proper appeal
is taken, the district court may generally take action only
in aid of the appeal or to correct clerical errors as
allowed by the Federal Rules.").  Thus, it is not the law,
as FIFA seems to suggest, that every proper appeal
completely divests a district court of its control over
aspects of the case involved in the appeal.

which judgment has been entered.  If FIFA were to go forward in Switzerland, it is conceivable that it could obtain, and enforce, an inconsistent arbitration award even before the Court of Appeals decides FIFA's appeal.  Such a result would change the status quo, which is precisely what an anti-suit injunction may be employed to prevent. Accordingly, the Court has jurisdiction to grant an anti-suit injunction, regardless of the pendency of FIFA's appeal.

II. Standard for Anti-Suit Injunction
    After Judgment Is Entered in
    One of Two Parallel Proceedings

    As the Court of Appeals has recognized, "[i]t is beyond question that a federal court may enjoin a party before it from pursuing litigation in a foreign forum," but "principles of comity counsel that injunctions restraining foreign litigation be 'used sparingly' and 'granted only with care and great restraint.'" Paramedics Electromedicina Comercial, Ltda. v. GE Medical Systems Info. Tech., Inc., 369 F.3d 645, 652 (2d Cir. 2004)(quoting China Trade and Devel. Corp. v. M.V. Choong Yong, 837 F.2d 33, 35 (2d Cir. 1987)).  The Court of Appeals recently reiterated that "due regard for principles of international comity and

reciprocity require a delicate touch" when considering anti-suit injunctions.  Ibeto Petrochemical Indus. Ltd. v. M/T Beffen, 475 F.3d 56, 65 (2d Cir. 2007).

However, "where a foreign court is not merely proceeding in parallel but is attempting to carve out exclusive jurisdiction over the action, an injunction may . . . be necessary to protect the enjoining court's jurisdiction." China Trade, 837 F.2d at 36.  While "parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other," id. (quoting Laker Airways, Ltd. v. Sebena, Belgian World Airlines, 731 F.2d 909, 926 (D.C. Cir. 1984))(internal quotations omitted), "there is less justification for permitting a second action . . . after a prior court has reached a judgment on the same issues," Paramedics Electromedicina, 369 F.3d at 654 (quoting Laker Airways, Ltd., 731 F.2d at 928 n.53)(internal quotations omitted).  In such a situation, "[a]n anti-suit injunction may be needed to protect the court's jurisdiction once a judgment has been rendered," because while "[t]he doctrine of res judicata . . . may obviate injunctive relief against re-litigation in a second forum[,] . . . a foreign court might not give res judicata effect to a United States judgment."

17

Paramedics Electromedicina, 369 F.3d at 654.  Thus, where, as
here, "one court has already reached a judgment -- on the
same issues, involving the same parties -- considerations of
comity have diminished force." Id. at 655.

The Court of Appeals continues to employ the test
announced in China Trade to evaluate when an anti-suit
injunction against parallel litigation may be imposed.
E.g., Ibeto, 475 F.3d at 64.  Pursuant to the China Trade
test, the threshold requirements for an anti-suit
injunction are: (1) the parties must be the same in both
matters, and (2) resolution of the case before the
enjoining court must be dispositive of the action to be
enjoined. Id. 837 F.2d at 35.  Here, those threshold
requirements are met.

First, clearly MasterCard and FIFA are the parties in
both matters.  Second, as set out in detail above, FIFA
seeks in the arbitration to undo the findings embodied in
the Amended Findings and Conclusions and the Judgment,
viz., that FIFA's purported termination of the 2002-06
Agreement was null and void, that FIFA violated Section 9.2
of the 2002-2006 Agreement, that FIFA is prohibited from
proceeding in any post-2006 sponsorship in the financial
services category with VISA but shall proceed with
MasterCard pursuant to the 2007-2014 MasterCard Agreement

18

between FIFA and MasterCard, which was sent by FIFA on
March 3, 2006, signed by MasterCard and returned to FIFA by
March 24, 2006, and that FIFA shall pay MasterCard's costs
and expenses.  Compare Amended Findings and Conclusions at
¶¶ 100, 101, 106, 116, 121 of Conclusions of Law and
Judgment with Arbitration Complaint at ¶ 1.  Thus, the
Judgment entered by this Court after a four-day preliminary
injunction hearing and trial on the merits is dispositive
of the action that FIFA is seeking to pursue before the
Arbitral Tribunal in Switzerland.  Indeed, as noted above,
FIFA itself stated in its Full Complaint to the Arbitral
Tribunal that "the object of this arbitration remains the
same" -- to have the Arbitral Tribunal reach conclusions
opposite to those embodied in the Judgment. (Arbitration
Complaint at ¶ 30).

FIFA argues that because MasterCard has filed a
counterclaim in the arbitration seeking, inter alia, money
damages, the findings here are not dispositive of all
issues in the arbitration proceeding.  While this fact
might affect the scope of an anti-suit injunction, that is,
exactly what FIFA is prohibited from arbitrating, it does
not change the fact that the determinations in this Court
are dispositive of FIFA's claims in the arbitration -- the

only proceeding sought to be enjoined.  Thus, the second
threshold requirement is met.

FIFA argues that if an anti-suit injunction is issued,
it should be temporary and should not require FIFA to
withdraw its notice of arbitration.  Although FIFA does not
support its assertion that withdrawal of its notice to
arbitrate could have a res judicata effect and although the
potential outcomes in the Court of Appeals suggest no
prejudice to FIFA,[3] FIFA noted at oral argument that, at all
events, it sought a declaration of its rights vis-à-vis
MasterCard.  If the Court of Appeals affirms in all
respects, FIFA will have received such a declaration and
thus will have no need to proceed elsewhere.  If the Court
reverses, in whole or in part, it is possible that the
Arbitral Tribunal might be found to be the appropriate
forum for such a declaration.

Also, the Ibeto court indicated the desirability of
temporary relief. 475 F.3d at 65.  There, the District
Court granted defendants' motions to compel arbitration and

---

[3] If FIFA loses the appeal, then any anti-suit injunction
granted now will become more, not less, provident.  If FIFA
wins the appeal, and MasterCard is compelled to arbitrate,
then any anti-suit injunction the Court grants now will
become immaterial.  Under those circumstances, if
MasterCard desired relief, it would have to bring an
arbitration claim, and FIFA would not have to re-file the
arbitration notice that it was ordered to withdraw.

enjoined the parties from pursuing a lawsuit concerning the same subject matter in Nigeria.  On appeal, the Court of Appeals noted that "there is no need for [a] permanent injunction . . . .  The parties need to be enjoined from proceeding in the courts of Nigeria only until the conclusion of the London arbitration and the consequent resolution of the still pending case in the District Court." Id. at 65.  Accordingly, temporary relief here might well be more appropriate.[4]

Once these threshold requirements have been met, there are additional factors cited by the China Trade Court that should be considered to determine if an anti-suit injunction is appropriate.  However, as FIFA has conceded, "the standard for enjoining foreign litigation after the domestic court reaches judgment is lower."[5] Farrell Lines Inc. v. Columbus Cello-Poly Corp., 32 F. Supp. 2d 118, 131

---

[4] At oral argument, the parties agreed that if an anti-suit injunction issued prohibiting FIFA from re-litigating the issues determined in this action, it would be inefficient for MasterCard to prosecute its counterclaim while FIFA's appeal was still pending in the Court of Appeals. Accordingly, MasterCard agreed, under those circumstances, to stay the prosecution of its counterclaim pending resolution of the appeal.

[5] Contrary to the suggestion made by FIFA that perhaps the lower standard should not be applied because the judgment of this Court is on appeal and thus not final, it is well-settled that a judgment is final and entitled to res judicata effect even on appeal. See, e.g. Huron Holding Corp. v. Lincoln Mine Operating Co., 312 U.S. 183, 188 (1941).

(S.D.N.Y. 1997). (FIFA's Memorandum of Law in Opposition to
MasterCard's Motion for Anti-Suit Injunction, dated Feb. 9,
2007, ("FIFA Opp. Memo"), at p. 16) ("Where, as here, this
Court has issued a judgment, MasterCard must establish
'harassment, bad faith or other equitable circumstance to
. . . support enjoining the foreign litigation.'" citing
Farrell Lines).   The standard is more lenient at the post-
judgment stage because "[w]hen the injunction is requested
after a previous judgment on the merits, there is little
interference with the rule favoring parallel proceedings in
matters subject to concurrent jurisdiction.  Thus, a court
may freely protect the integrity of its judgments by
preventing their evasion through vexatious or oppressive
relitigation." Farrell Lines, 32 F. Supp. 2d at 131
(quoting Laker Airways, 731 F.2d at 928)(footnotes
omitted).

     Although FIFA asserts that "it commenced the
arbitration in . . . good faith" "many months ago, only a
short time after MasterCard filed its complaint," that
there was "no forum shopping here" and that it is not
"certain that the arbitration will result in significant
delay, inconvenience, expense or an inconsistent decision"
(FIFA Opp. Memo at pp. 16-17), those assertions are belied
by the present state of the record.  Even if FIFA's claims

22

of "good faith" and "no forum shopping" intentions when it
originally brought the arbitration can be taken at face
value -- which is questionable given that FIFA did not
bring the arbitration until two months after this lawsuit
was filed and only in response to MasterCard's preliminary
injunction motion -- its continued pursuit of the
arbitration now, when all of the issues have been decided
and judgment entered, cannot possibly be reconciled with
good faith or the absence of forum shopping.  Its post-
judgment pursuit in the arbitral forum of a result opposite
to that obtained in this Court is a paradigm of bad faith
forum shopping.

FIFA's assertion that the arbitration might not result
in any inconvenience, expense or risk of an inconsistent
decision is so obviously untrue as to be astounding.  It is
beyond peradventure that there would be increased expense
and inconvenience to the parties if they are required to
re-litigate the same issues on which they already have
expended hundreds -- indeed, more likely, thousands -- of
hours, including extensive motion practice, depositions and
a four-day trial.  Also, while the potential outcome of the
Arbitral Tribunal cannot be determined at this point, the
Arbitral Tribunal stated in its Preliminary Award on
November 27, 2006 that any "court decision resulting from

the proceedings in New York would, based on the facts submitted so far, most likely not be recognizable in Switzerland," (Preliminary Award at ¶ 118), and thus there is danger of an inconsistent award.

Therefore, while the Court is cognizant of the need to employ "a delicate touch" in considering an anti-suit injunction out of respect for principles of international comity, Ibeto, 475 F.3d at 65, those "considerations of comity have diminished force" at this post-judgment stage, Paramedics Electromedicina, 369 F.3d at 654.  Accordingly, based on the more lenient standard applicable after a domestic judgment has been entered, an anti-suit injunction is appropriate in this case in order "to protect the integrity of [this Court's] judgment[] by preventing [its] evasion through vexations or oppressive relitigation," Farrell Lines, 32 F. Supp. 2d at 131 (quoting Laker Airways, 731 F.2d at 928), which would expose the parties to possible inconsistent judgments.

B. China Trade Standard
   For Anti-Suit Injunctions

Even if FIFA did not act in bad faith or if the lower post-judgment standard is not applicable, an anti-suit injunction would still be appropriate under the additional factors discussed in China Trade.  As discussed above,

there are two threshold requirements from China Trade that
must be met: (1) the parties must be the same in both
matters; and (2) the resolution of the case before the
enjoining court must be dispositive of the action to be
enjoined.  Once those requirements are met, the China Trade
Court listed five additional factors that courts should
consider when determining whether to grant an anti-suit
injunction: (1) frustration of a policy in the enjoining
forum; (2) the foreign action would be vexatious; (3) a
threat to the issuing court's in rem or quasi in rem
jurisdiction; (4) the proceedings in the other forum
prejudice other equitable considerations; or (5)
adjudication of the same issues in separate actions would
result in delay, inconvenience, expense, inconsistency, or
a race to judgment. 837 F.3d at 35.

In China Trade, the Court of Appeals found that the
factors having "greater significance" in that case were
threats to the enjoining forum's jurisdiction and to its
strong public policies. Id. at 36.  However, the Court of
Appeals has more recently noted that "some courts and
commentators have erroneously interpreted China Trade to
say that we consider only these two factors. Ibeto, 475
F.3d at 64.(emphasis in original).  While it is appropriate
to consider all five factors under the China Trade test,

there is no explicit instruction from the Court of Appeals
that all the factors must be given the same consideration
and weight, and China Trade seems to suggest that weight
may vary according to the facts. 837 F.3d at 35 (referring
to "the factors having 'greater significance'") (citation
omitted).  Under the circumstances presented here, the
China Trade factors weigh in favor of granting an anti-suit
injunction.

        While the Court of Appeals in China Trade listed the
third factor as a threat to the issuing court's in rem or
quasi in rem jurisdiction and noted that that was a long-
standing exception to the usual rule tolerating concurrent
proceedings, the Court went on to explain that "[e]ven in
in personam proceedings, if a foreign court is not merely
proceeding in parallel but is attempting to carve out
exclusive jurisdiction over the action, an injunction may
also be necessary to protect the enjoining court's
jurisdiction." 837 F.3d at 36.  That is precisely what the
Arbitral Tribunal is attempting to do here.  As noted
above, the Tribunal has already determined that "there is
no jurisdiction of these other fora for final relief" on
the merits of this dispute, (Preliminary Award at ¶ 208),
and that this Court's judgment would "most likely not be
recognizable in Switzerland," (id. at ¶ 30) (emphasis in

original).  Thus, the Arbitral Tribunal is not merely
proceeding in parallel but is "carving out" exclusive
jurisdiction over the action. China Trade, 837 F.2d at 36.
When the action of a litigant in another forum "threatens
to paralyze the jurisdiction of the court, the court may
consider the effectiveness and propriety of issuing an
injunction against the litigant's participation in the
foreign proceedings." Laker Airways, 731 F.2d at 927.  This
is the most weighty factor under the circumstances
presented here, and it strongly supports issuance of an
anti-suit injunction.

As to other China Trade factors, as noted above,
FIFA's admitted attempt in the arbitration to re-litigate
the same issues that were decided by this Court upon which
judgment which has been entered, evidenced by the relief it
seeks in its Arbitration Complaint, would be vexatious and
would result in delay, inconvenience, expense and would
present the possibility of inconsistent judgments.
Although a less weighty policy consideration than the
policy favoring arbitration noted in Ibeto, 475 F.3d at 65,
and Paramedics Electromedicina, 369 F.3d at 654, the
general policy of protecting final judgments noted in the
anti-suit injunction cases and, most recently, in Karaha
Bodas Co., LLC v. Pertamina, No. 21-MC-00098(TPG), 2006 WL

2615063, at *13 (S.D.N.Y. Dec. 8, 2006), weighs in favor of issuing the anti-suit injunction.  Thus, even under the higher China Trade standard, the factors considered weigh in favor of granting an anti-suit injunction.

C.   Laches

FIFA argues that the equitable relief MasterCard seeks should be denied because of MasterCard's inequitable conduct.  The supposed inequitable conduct is MasterCard's waiting until now to seek an anti-suit injunction; the supposed prejudice is the time and expense devoted by FIFA to pursuing the arbitration.

Throughout its opposition papers, but particularly in making its laches argument, FIFA fails to acknowledge the quantum difference between parallel proceedings pre- and post-judgment.  As the Court of Appeals recognized expressly in China Trade, "parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached . . . ." Id. at 36 (emphasis added) (quoting Laker Airways, 731 F.2d at 926-27); see Farrell Lines, 32 F. Supp. 2d at 131 ("the standard for enjoining foreign litigation after the domestic court reaches judgment is lower").  Under this rule, a request by MasterCard for an anti-suit injunction in advance of judgment would most likely have been denied

as premature but is appropriate at this post-judgment
stage.  In light of this unambiguous law, FIFA's argument
that MasterCard's delay in requesting an anti-suit
injunction until after judgment had been entered is
disingenuous at best.

CONCLUSION

For the reasons set out above, MasterCard's motion for
a temporary anti-suit injunction is granted.


SO ORDERED:

Dated:  New York, New York
        February 28, 2007


LORETTA A. PRESKA, U.S.D.J.


29